UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TAMMY JENNINE YOUNG        CIVIL ACTION NO. 6:17-0689

VERSUS        JUDGE ROBERT G. JAMES

U.S. COMMISSIONER,        MAGISTRATE JUDGE WHITEHURST
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Debbie James, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant filed an application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging disability beginning on August 16, 2012 due to "spinocerebellor ataxin."[1] Her application was denied initially on January 24, 2013.[2]  The claimant requested

---

[1]      Rec. Doc. 4 at 195-206.

[2]      Rec. Doc. 4 at 98-101.

a hearing,[3] which was held on October 7, 2013 before Administrative Law Judge Michael M. Wahlder.[4]   ALJ Whalder issued a decision on November 25, 2013,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from August 16, 2015 through the date of the decision.  The claimant asked for review of the decision, and on January 30, 2015, the Appeals Council remanded the matter for another hearing with special instructions for the ALJ to evaluate, *inter alia*, non-medical sources such as the claimant's daughter and work supervisor with weight assessed pursuant to Social Security Ruling 06-03p, to consider third party statements and consider the weight given to non-medical sources, and to give further consideration to the claimant's maximum residual functional capacity.[6]

The case was heard on remand by a second ALJ, Mary Gattuso, on April 23, 2015.[7]   An unfavorable decision was rendered on September 9, 2015.[8]   A timely request for review was directed to the Appeals Council, which denied the request for

_____

[3]  Rec. Doc. 4 at 111-12.

[4]  The hearing transcript is found at Rec. Doc. 4 at 51-59.

[5]  Rec. Doc. 4 at 80-93.

[6]  Rec. Doc. 4 at 95-96.

[7]  See Doc. 8, Supplemental Transcript.

[8]  Rec. Doc. 4 at 23-50.

a review on March 28, 2017.[9]   Therefore, the ALJ's September 9, 2015 decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. §405(g).   The claimant then filed this action seeking review of the Commissioner's decision.

### SUMMARY OF PERTINENT FACTS

The claimant was born on December 1, 1965.[10]   At the time of the ALJ Gattuso's decision, she was 46 years old.   She has a high school education, is 4'9" tall and weighs 170 lbs., and works in sheltered employment at the Basile Care Center where she works 16-20 hours per week.   The claimant reports that at the time of her October 2013 hearing, she had been working at the Care Center as a dietary aide off and on for twenty-two years.   She alleges that she has been disabled since August 16, 2012 due to "spinocerebellor ataxin."[11]   As her medical problems progressed, she alleges her work hours were reduced and she was allowed to stay employed but only with special treatment as described by her work supervisor, Jennifer Marcantel.

---

[9] Rec. Doc. 4 at 1-6.

[10] Rec. Doc. 4 at 195.

[11] Rec. Doc. 4 at 195-206.

<u>ANALYSIS</u>

**A.    <u>STANDARD OF REVIEW</u>**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the

---

[12]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]    *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[15]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

## B. ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[19] Every individual who meets certain income and resource requirements, has filed an application for benefits, and

---

[16] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17] *Martinez v. Chater*, 64 F.3d at 174.

[18] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[19] See 42 U.S.C. § 423(a).

is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

## C.  EVALUATION PROCESS AND BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the

---

[20]     42 U.S.C. § 1382(a)(1) & (2).

[21]     42 U.S.C. § 1382c(a)(3)(A).

[22]     42 U.S.C. § 1382c(a)(3)(B).

claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[26]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[27]

---

[23]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[25]     20 C.F.R. § 404.1520(a)(4).

[26]     20 C.F.R. § 404.1545(a)(1).

[27]     20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps.[28]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

## D.  THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ noted that the claimant was working at the time of her applications, which her earnings records confirmed, and found that the claimant's work activity did not rise to substantial gainful activity.[33]  The ALJ determined that

---

[28] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[33] Rec. Doc. 4 at 29.

-8-

the claimant had severe impairments of "cerebellar degeneration disorder of unknown etiology; obesity; and hypertension."[34]    The ALJ assessed her with a residual functional capacity (RFC) for light work except the claimant can never climb ladders, ropes, and scaffolds; work with moving and/or dangerous machinery or equipment; work around unprotected heights; work exposed to temperature extremes, or drive commercially.  The ALJ determined she can occasionally climb ramps and stairs, balance, crouch, crawl, kneel, and stoop.  Furthermore, the ALJ found the claimant retains the ability to do unskilled work involving simple, repetitive tasks, no strict productions quotas or fast-paced work, and no direct contact with the public.[35]  Based on the VE's testimony, the ALJ concluded the claimant was not disabled because she could perform other work available in significant numbers in the national economy.[36]

Thus at step one, the ALJ found that the claimants meets the insured status requirements of the Social Security Act through December 31, 2019, but that she has not engaged in substantial gainful activity since August 16, 2012.  This finding is supported by the evidence in the record.  At step two, the ALJ found that the claimant has the following severe impairments: cerebellar degeneration disorder of unknown

---

[34] Rec. Doc. 4 at 30-31.

[35] Rec. Doc. 4 at 34-42.

[36] Rec. Doc. 4 at 43-43.

etiology; obesity; and hypertension.  This finding is supported by evidence in the record.   At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  The claimant challenges this finding.    The ALJ found that the claimant has the residual functional capacity to perform work at the light level except that except the claimant can never climb ladders, ropes, and scaffolds; work with moving and/or dangerous machinery or equipment; work around unprotected heights; work exposed to temperature extremes, or drive commercially.  The ALJ determined she can occasionally climb ramps and stairs, balance, crouch, crawl, kneel, and stoop. Furthermore, the ALJ found the claimant retains the ability to do unskilled work involving simple, repetitive tasks, no strict productions quotas or fast-paced work, and no direct contact with the public.  The claimant challenges this finding.  At step four, the ALJ found that the claimant is not capable of performing her past relevant work.  At step five, the ALJ found that the claimant was not disabled from August 16, 2012 through September 9, 2015 (the date of the decision) because there are jobs in the national economy that she can perform.  The claimant challenges this finding.

## E.    THE ALLEGATIONS OF ERROR

The claimant argues the ALJ erred in failing to find that the claimant meets a listed impairment and in denying benefits overall.

-10-

1.     LISTED IMPAIRMENT

The ALJ found the claimant does not satisfy any Listing, including Listing §§11.17 (degenerative disease not listed elsewhere), which the claimant argues is error. The claimant bears the burden of establishing that her impairments meet a listing. A claimant must provide findings that support each of the criteria for any Listing that she allegedly meets. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990), *citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant's argument that she closely meets a Listing's criteria does not warrant relief. *See Selders*, 914 F.2d at 619.

The record shows that the ALJ specifically considered Listing §11.17 and concluded the claimant did not meet the requirements of the listing, as follows:

> In reaching this conclusion, the undersigned has reviewed the claimant['s] impairments using Section 11.17 (degenerative disease not listed elsewhere), of the Listing of Impairments contained in 20 CFR part 404, Appendix 1 to Subpart P. The current evidence, however, fails to establish an impairment that is accompanied by signs that are reflective of listing-level severity. Also, none of the claimant's treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings specific therein, nor has the claimant's condition resulted in the inability to ambulate effectively.
>
> An MRI in 2011 was normal . . . Treatment notes also indicate that an MRI in 2012 was normal . . .
>
> The claimant's hypertension fails to meet or medically equal any section of the Listing of Impairments including sections 4.02 or 4.04 because

-11-

the record fails to demonstrate evidence of systolic or diastolic failure (4.02A), persistent symptoms of heart failure limiting the ability to independently initiate, sustain, or complete activities of daily living, three or more separate episodes of acute congestive heart failure within a 12-month period, or an inability to perform on an exercise tolerance test (4.02B).  The record evidence further fails to demonstrate ischemic heart disease with sign- or symptom-limited exercise tolerance test (4.04B), or coronary artery disease demonstrated by angiography or other appropriate medically acceptable imaging (4.04C).[37]

The ALJ further went on to explain:

 . . . Testing has been negative.  The claimant does have high blood pressure at time, which can cause some dizziness, etc.  Due to the lack of objective findings, and because the claimant has alleged symptoms that she has sought intermittent care for over the last 4 years, but her doctors appear to have given a diagnosis of cerebellar degeneration disorder of unknown etiology.  This was found to be a severe impairment by Judge Whalder.  He further found that it prevented the claims from doing more than light work.

The undersigned finds similarly but has added additional impairments.  The undersigned has fully assessed all possible limitations that the evidence reasonably allows.  The residual functional capacity set out below is very generous given the minimal evidence presented in this case other than symptoms.[38]

The claimant argues she has "presented proof" that she has lost function in both

upper extremities which "seriously limit her ability to independently initiate, sustain,

---

[37] Rec. Doc. 4 at 33.   In concluding that the claimant did not meet the requirements of Listing 11.17, ALJ Gattuso noted that ALJ Whalder had similarly concluded the claimant did not meet this Listing, and the evidence gathered in the record since the time of her first hearing before ALJ Whalder continued to fail to demonstrate a condition of listing severity.  Rec. Doc. 4 at 34.

[38] Rec. Doc. 4 at 33.

-12-

and complete work-related activities involving fine and gross movements." However, the "proof" offered by the claimant are the statements and testimony of her work supervisor, Jennifer Marcantel, and her own reports of her symptoms.

The claimant fails to cite to any objective medical criteria showing that she meets the Listing. No treating or examining physician has reported any of the clinical, laboratory, or radioagraphic findings that would support a finding that the claimant satisfies the requirements of any listed impairment. *See, e.g., Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) ("In the absence of objective medical evidence indicating that Plaintiff suffered disabling back pain, Plaintiff failed to meet her burden of proving disability"). As the respondent argues, "[i]t is the functional consequences of a claimant's impairments, not the diagnosis of an impairment, that the ALJ considers in making a determination as to disability. *See Hames*, 707 F.2d at 165 ("The mere presence of some impairment is not disabling per se. A claimant must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity."), *citing Demandre v. Califano*, 591 F.2d 1088 (5th Cir.1979). As the court stated in *Hames*:

> The Secretary did not find that Plaintiff did not have a back problem. Rather he found that the degree of impairment evidenced by the objective medical finding did not impose functional restrictions of disabling severity on Plaintiff's activities. It should also be noted that

-13-

individuals capable of performing even light or sedentary work, despite back trouble, are not disabled under the Act.

707 F.2d at 165–66, *citing Fortenberry v. Harris*, 612 F.2d 947 (5th Cir.1980); *Chaney v. Califano*, 588 F.2d 958 (5th Cir.1979).

In the instant case, the ALJ acknowledged the claimant's limitations and appears to have generously assessed the impact of those limitations on the claimant's functional capacity. However, after weighing all of the evidence, including the medical records and the testimony of the claimant's supervisor and daughter and Mr. Driggs, a physical therapist hired by the claimant who conducted a functional capacities evaluation on June 25, 2015, the ALJ concluded the claimant does not satisfy the requirements of any listing, including Listing §11.17. After a review of the record, the undersigned finds no error in the assessment of the ALJ as to the listed impairment.

## 2.   DENIAL OF BENEFITS

The claimant argues the hypothetical questions posed to the vocational expert at the claimant's hearing "were not appropriate" and that the decisions made by the ALJ as to credibility and the plaintiff's residual functional capacity are not supported by substantial evidence. The crux of the claimant's argument is that she cannot balance, and that the ALJ's step five determination that she can perform work that

-14-

exists in the national economy is not consistent with this medical finding. The claimant presents medical records from UMC dated April 2011 through March 2015 and argues they support her contention that she experiences a sense of imbalance, dizziness, and difficulty speaking.

The medical records from UMC do confirm that the claimant has been evaluated for complaints of dizziness and difficulty speaking. The ALJ exhaustively reviewed these records and considered them in making her disability determination. The ALJ also considered the opinions of two doctors who examined the claimant in connection with her claim for benefits. The claimant underwent a consultative examination by Dr. Rebecca Delahoussaye Soine on January 5, 2013. The claimant reported that for the past year, she had been having trouble walking and talking. Dr. Soine noted the claimant "had no medication, no neurology followup, no neurological workup and . . . her medical records [showed] a normal MRI of the brain." Doc. 449. Dr. Soine further reported:

> She is awake, alert and oriented in no acute distress. She can get on and off the examination table. She can ambulate without significant difficulty. No medically assistive device is required. She is able to walk on her heels, walk on her toes, heel-toe walk, and squat. She can dress and undress herself, get up and out of the chair, and on and off the examination table. She can hear at regular voice level. Her speech is 100% understandable.
>
> [ . . . ]

-15-

Range of motion exam was within normal limits for the elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, hip, knee, and ankle. Her straight leg raising was normal. She laid straight back on the examination table and did not roll to her side. . . .[39]

Dr. Soine's impression was spinocerebellar ataxia. Dr. Soine stated:

The patient did not have significant documentation in her medical records of the diagnosis of this. It was suspected that she had some form of cerebellar degeneration, but her brain MRI was normal. On examination today, she did not exhibit any signs of cerebellar weakness or dysfunction. She had normal finger-nose, normal alternating hand movements, no nystagmus and no tremor. Her gait was normal. She was able to speak normally. She was 100% understandable and did not appear to suffer significantly with any limiting dysarthria. No functional limitation appreciated on examination today.[40]

The record also contains the report of Dr. Stephanie Hajj, who examined the claimant on May 30, 2015, at the request of Disability Determinations Services. Dr. Hajj noted that the claimant stated "she uses a cane to ambulate."[41] However, upon examination, Dr. Hajj reported that the claimant "is able to get up and out of the chair without difficulty. The claimant is able to get on and off the examination table without difficulty. The claimant ambulates without difficulty and without assistive

---

[39] Rec. Doc. 4 at 450.

[40] Rec. Doc. 4 at 450.

[41] Rec. Doc. 4 at 486.

-16-

device.  Gait is normal."[42]  Dr. Hajj went on to note that "[a]] range of motions is

normal and no joint deformities were noted." (Doc. 488).  Dr. Hajj opined as follows:

> Based on the available medical history and objective clinical findings,
> this claimant has limitations.   They are as follows: Talking and
> communicating as her speech is slurred and getting worse according to
> her, otherwise has normal cerebral exam.   The claimant ambulates
> without difficulty and without assistive device.[43]

The claimant argues the ALJ erred in relying so heavily on the opinions of Dr.

Soine and Dr. Hajj, rather than the claimant's "treating physicians" at UMC, the

claimant's daughter and work supervisor, the claimant herself, and physical therapist

Michael W. Driggs.  Mr. Driggs reported that the claimant "almost fell 6 times during

the static lifting, balance , frequent lifting, bending, and walking activities" of the

examination.[44]   She was unable to "complete functional activities of bending,

crouching, walking, kneeling, climbing, and balancing required to work a job that

would require the performance of these actions on a daily basis."[45]   Mr. Driggs

ultimately opined that the claimant "should be suited for SEDENTARY to LIGHT

work based on DOT scale although her occasional strength parameters show her at

---

[42] Rec. Doc. 4 at 487.

[43] Rec. Doc. 4 at 489.

[44] Rec. Doc. 4 at 499.

[45] *Id.*

Medium level."[46]  The ALJ noted and considered the testimony of claimant's work supervisor, Jennifer Marcantel, who testified that the claimant's balance is "extremely worse and writing skills have worsened."[47]

It is well-settled that a physical therapist is not an acceptable medical source to "provide evidence to establish an impairment." *Forest v. Astrue*, 2012 WL 3137844 (Aug.l 1, 2012), at \*11, *citing* 20 C.F.R. § 404.1513(a).  As the court stated in *Forest*:

> Although the ALJ did not discuss the weight she gave to the physical therapist's findings, it is well established that a physical therapist is an "other" medical source, rather than an "acceptable medical source." 20 C.F.R. § 404.1513(d)(1) & 416.913(d)(1).  This distinction is material because only "acceptable medical sources" can provide "medical opinions" to show the severity of a claimant's impairment and how it affects her functional ability. 20 C.F.R. § 1527(a)(2) & 416.927(a)(2).

> Although the ALJ is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion, "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because ... 'acceptable medical sources' 'are the most qualified health care professionals.'"

2012 WL 3137844 at \*11, *citing Patterson v. Astrue*, 2011 WL 6157475, at \*8 (W.D.La. Apr.13, 2011) report & recommendation adopted, 2011 WL 2294807

---

[46] *Id.*

[47] Rec. Doc. 4 at 36.

-18-

(W.D.La. June 8, 2011) (quoting SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006))

and *citing Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991); *Reynolds*, 2010 WL

583918, at *1); *accord Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir.2009)

(social worker therapist's opinion is entitled to less deference than psychiatrist's

opinion).

The court went on to state:

Thus, to the extent that the findings of plaintiff's physical therapist are
either contradicted or unsupported by the opinions of Jan A. Cooper,
M.D., plaintiff's treating physician; Jacques S. Whitecloud, the
orthopedist who examined plaintiff once and referred him to physical
therapy; and Miljana Mandich, M.D., the internist who examined Forest
at the request of the Commissioner, the ALJ was justified in according
greater weight to the doctors' findings than to those of the therapist.
*Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 787 (6th Cir.2010);
*Thornton v. Astrue*, 337 F. App'x 600, 602 (8th Cir.2009); *Leval v.
Comm'r of Soc. Sec.*, 2012 WL 1123839, at *1 n. 1 (W.D.La. Mar.13,
2012), report & recommendation adopted, 2012 WL 1123835 (W.D.La.
Apr.3, 2012), *citing Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

Here, the ALJ gave the opinion of Dr. Hajj great weight, and found the opinion

of Mr. Driggs to be inconsistent with the opinion of Dr. Hajj.  After review of the

record, the undersigned concludes Dr. Hajj's opinion provides substantial support for

the ALJ's residual functional capacity assessment, the hyppothetical questions posed

to the VE, and the ultimate step 5 determination.  The VE testified that the claimant

would have to be able to walk and/or stand for six hours per day for any light duty

jobs.[48]   However, Dr. Hajj reported that the claimant can stand and walk for 8 hours

a day, and this finding is supported by the record of Dr. Hajj's examination.

The ALJ considered the claimant's own testimony concerning her limitations

and noted:

> After careful consideration of the evidence, the undersigned finds that
> the claimant's medically determinable impairment could reasonably be
> expected to cause some of the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and limiting
> effects off these symptoms are not entirely credible for the reasons
> explained in this decision.[49]

The ALJ goes on to note the claimant's non-compliance with medication

regimes[50] and a "significant gap in treatment" from August 3, 2012 to mid-2013.[51]

Explaining her residual functional capacity assessment, the ALJ stated:

> The undersigned notes that this residual functional capacity is very
> generous to the claimant given the minimal objective or clinical
> evidence.  Though limitations were given above that would typically
> apply in the case of severe mental limitations such as "no direct contact
> with the public," the undersigned specifically finds that no medically
> determinable mental disorder has been assessed in this case.  The
> limitations above are based upon a review of all evidence, and give
> some weight though not full, to the claimant's assertions.  Though the
> claimant filed her application for benefits more than 3 years ago, and has

---

[48] See Doc. 9 at 586.

[49] Rec. Doc. 4 at 36.

[50] Rec. Doc. 4 at 36.

[51] Rec. Doc. 4 at 37.

undergone numerous tests, the record continues to fail to demonstrate a condition that would reasonably impose disabling limitations.[52]

Finally, the undersigned notes that in response to a hypothetical involving an individual of the claimant's age and education and ability to do light work, but who can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, and can occasionally do other postural activities, which include balance, crouching, crawling, kneeling, and stooping; cannot work with moving or dangerous equipment or machinery, and cannot engage in commercial driving or work at unprotected heights; is able to do unskilled work that is simple and repetitive, which does not involve strict production quotas or fast-paced work; and cannot work in an environment where they would be exposed to temperature extremes, the VE testified that there are jobs that the individual can do, including laundry worker, janitor and building cleaner, and maid and housekeeping cleaner.  The VE noted these jobs are all light and unskilled.  Most importantly, as the respondent points out in its brief, a review of the Dictionary of Occupational Titles ("DOT") show that the activity of "balancing" is not present for the jobs of laundry worker and housekeeping cleaner, of which there are 187,000 positions in the national economy.  Thus, as the respondent argues, the claimant could do these jobs while never having to balance.

---

[52] Rec. Doc. 4 at 34.

After considering all of the evidence in the record, the undersigned finds that substantial evidence supports the findings of the ALJ as to her assessment of the claimant's residual functional capacity, her hypothetical questions posed to the VE, her assessment of the claimant's credibility, and the ultimate determination of disability.

CONCLUSION AND RECOMMENDATION

For the forgoing reasons, the undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 29th day of August 2018.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**